Eliot S. SASH, Petitioner–Appellant,

v.

Michael ZENK, Federal Bureau of Prisons, Defendants–Appellees.

Docket No. 04–6202–PR.

United States Court of Appeals, Second Circuit.

Argued: Sept. 20, 2005.

Decided: Oct. 26, 2005.

Filed: Dec. 9, 2005.

Decided: Feb. 22, 2006.

David A. Lewis, Federal Defenders of New York, Inc., Appeals Bureau, New York, NY, for Petitioner–Appellant.

Emily Berger, Assistant United States Attorney (Roslynn R. Mauskopf, United States Attorney, on the brief; Susan Corkery, Assistant United States Attorney, of counsel), Eastern District of New York, Brooklyn, NY, for Defendants–Appellees.

Before: SOTOMAYOR and WESLEY, Circuit Judges, and BRIEANT, District Judge.*

SOTOMAYOR, Circuit Judge.

## ON PETITION FOR REHEARING

Appellant Eliot S. Sash petitions the panel for rehearing to reconsider its decision in *Sash v. Zenk*, 428 F.3d 132 (2d Cir.2005). We assume familiarity with our original decision and its underlying facts. Because Sash has failed to show "point[s] of law or fact that ... the court has overlooked or misapprehended," Fed. R.App. P. 40(a)(2); *see Treadway Cos., Inc. v. Care Corp.*, 638 F.2d 357, 386 (2d Cir.1980) (denying petition for rehearing), the petition is denied. We write to address an issue not raised in the briefs or oral argument in this case, but which Sash argues arises as a result of our earlier opinion.

## I. The Rule of Lenity and the *Ex Post Facto* Doctrine

In our earlier opinion, the threshold question was whether this Court should resolve ambiguities in 18 U.S.C.

---

* The Honorable Charles L. Brieant, District Judge of the United States District Court for the Southern District of New York, sitting by designation.

§ 3624(b), the statute governing calculation by the Bureau of Prisons (BOP) of sentencing credits for good behavior in prison, also known as "good time" credit, by reference to the interpretive guidelines set forth in *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 843, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), or by reference to the rule of lenity. We held that the rule of lenity does not apply to our interpretation of § 3624(b) because the calculation of good time credit does not concern criminal punishment in a way that implicates either of the purposes of the rule of lenity; in other words, the calculation of sentencing credit is not "criminal" for purposes of the rule of lenity. 428 F.3d at 135. Sash argues that this holding contradicts Supreme Court precedent establishing that such calculations are criminal for purposes of an *ex post facto* analysis.[1] We address Sash's argument to avoid any confusion as to the import of our earlier opinion.

The *ex post facto* doctrine is one of the Constitution's several protections against retroactive application of legislation. *See Lynce v. Mathis,* 519 U.S. 433, 439 & n. 12, 117 S.Ct. 891, 137 L.Ed.2d 63 (1997); *see also* U.S. CONST. art. I, § 9 ("No Bill of Attainder or ex post facto Law shall be passed."); *id.* § 10 ("No State shall ... pass any ... ex post facto Law."). The Supreme Court has held that the calculation of sentencing credits is a criminal matter for purposes of the *ex post facto* doctrine. *See Lynce,* 519 U.S. at 439, 440–47, 117 S.Ct. at 894, 895 – 898; *Weaver v. Graham,* 450 U.S. 24, 32, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981). But this does not mean that regulations of good time calculation are also "criminal" for purposes of the rule of lenity.

It may seem strange that a statute can be considered "criminal" for some purposes and not for others. *See United States v. Bedonie,* 317 F.Supp.2d 1285, 1309–10 (D.Utah 2004) (suggesting that the same test for "punishment" should apply in both the *ex post facto* and rule of lenity contexts), *rev'd on other grounds sub nom. United States v. Serawop,* 410 F.3d 656 (10th Cir.2005). But the Supreme Court has plainly indicated that this is sometimes the case. *See United States v. Ward,* 448 U.S. 242, 253–54, 100 S.Ct. 2636, 65 L.Ed.2d 742 (1980) ("The question before us, then, is whether the penalty imposed in this case, although clearly not 'criminal' enough to trigger the protections of the Sixth Amendment, the Double Jeopardy Clause of the Fifth Amendment, or the other procedural guarantees normally associated with criminal prosecutions, is nevertheless so far criminal in its nature as to trigger the Self–Incrimination Clause of the Fifth Amendment.") (internal alteration and quotation marks omitted).

Furthermore, it is clear that sentencing-administration statutes may be "criminal" for some purposes but not for others. For purposes of the Sixth Amendment right to counsel, for example, the prison disciplinary hearings that deprive inmates of good time are not considered "criminal." The Supreme Court held in *Baxter v. Palmigiano,* 425 U.S. 308, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976), that inmates do not have a right to retained or appointed counsel at "prison disciplinary hearings which are not part of a criminal prosecution." *Id.* at 315, 96 S.Ct. 1551 (internal alterations and quotation marks omitted). Thus, prison disciplinary hearings are not treated as "criminal" for purposes of the Sixth Amendment. *See* U.S. CONST., amend. VI ("In all criminal prosecutions, the accused

---

1. Sash also argues that § 3624(b) unambiguously supports his preferred reading of the statute. We reject this argument for the reasons stated in our earlier opinion.

shall enjoy the right . . . to have the Assistance of Counsel for his defence."); *see also Wolff v. McDonnell*, 418 U.S. 539, 570, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) (finding no general due process right to counsel during prison disciplinary proceedings). In another context, this Circuit has held that sentencing-administration statutes are not "criminal" for purposes of Double Jeopardy analysis. *See Porter v. Coughlin*, 421 F.3d 141, 148 (2d Cir.2005) (applying the factors set forth in *Kennedy v. Mendoza–Martinez*, 372 U.S. 144, 168–69, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963)). These precedents do not conflict with the Supreme Court's holding that good time calculation is a criminal matter for *ex post facto* purposes.

Additionally, the Supreme Court has indicated that it is appropriate for the BOP to interpret sentencing-administration statutes like the one at issue here. *See Lopez v. Davis*, 531 U.S. 230, 240, 121 S.Ct. 714, 148 L.Ed.2d 635 (2001) (applying *Chevron* deference to BOP interpretation of early release statute); *Reno v. Koray*, 515 U.S. 50, 60–61, 115 S.Ct. 2021, 132 L.Ed.2d 46 (1995) (noting that the BOP is the agency charged with administering 18 U.S.C. § 3585(b), which governs credit for prior custody, and that its interpretation is therefore entitled to deference). We infer that such statutes do not refer to the underlying criminal conduct, because an agency cannot be given discretion to interpret the scope of a criminal law. *See Michel v. INS*, 206 F.3d 253, 262 (2d Cir. 2000). Thus, Supreme Court precedent suggests that sentencing-administration statutes are criminal for *ex post facto* purposes, but not in the context of administrative law deference analysis.

■ There are good reasons to treat the *ex post facto* doctrine as more expansive than the rule of lenity. The rule of lenity and the *ex post facto* doctrine are related,

because both are concerned with notice and fair warning. *See United States v. Lanier*, 520 U.S. 259, 266–67, 117 S.Ct. 1219, 137 L.Ed.2d 432 (1997). But the two rules have different purposes. The rule of lenity concerns situations in which a legislature fails to give notice of the scope of punishment by leaving "a grievous ambiguity or uncertainty in the language and structure of the [statute], such that even after a court has seized everything from which aid can be derived, it is still left with an ambiguous statute," *Chapman v. United States*, 500 U.S. 453, 463, 111 S.Ct. 1919, 114 L.Ed.2d 524 (1991), in which case the rule of lenity tips the scales in favor of the defendant by requiring the court "to impose the lesser of two penalties." *United States v. Venturella*, 391 F.3d 120, 132 (2d Cir.2004) (quoting *United States v. Canales*, 91 F.3d 363, 368 (2d Cir.1996)). The *ex post facto* doctrine concerns situations in which the legislature gives adequate notice, but then affirmatively changes its instructions in a way that disadvantages the defendant. In other words, the rule of lenity deals with notice that is inadequate, while the *ex post facto* doctrine deals with notice that turns out to be affirmatively and harmfully misleading.

Put another way, notice problems in the *ex post facto* context arise not from statutory ambiguity, but from retrospective changes in laws upon which citizens are entitled to rely. *See Weaver*, 450 U.S. at 28–29, 101 S.Ct. 960. Therefore, the *ex post facto* doctrine is concerned not just with notice, but with the inherent injustice associated with retroactivity itself. For this reason, the Supreme Court has associated the *ex post facto* doctrine with the Fifth Amendment's Takings Clause, which "prevents the Legislature . . . from depriving private persons of vested property rights except for a 'public use' and upon payment of 'just compensation,' " and with the "prohibitions on 'Bills of Attainder' in

Art. I, §§ 9–10, [which] prohibit legislatures from singling out disfavored persons and meting out summary punishment for past conduct." *Landgraf v. USI Film Prods.*, 511 U.S. 244, 266, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994). *Ex post facto* is as much a doctrine of retroactivity as it is a doctrine of notice. Because the inherent injustice associated with retroactivity is not present in the context of the rule of lenity, the rule of lenity is more narrowly focused than the *ex post facto* doctrine and should be more narrowly applied.[2]

The fact that the *ex post facto* doctrine and the rule of lenity share a concern for notice does not require that their scope be identical. We note that the vagueness doctrine is "related" to the rule of lenity and the *ex post facto* doctrine, because all concern fair notice, *see Lanier*, 520 U.S. at 266, 117 S.Ct. 1219, but no one contends that the rule of lenity should apply in the civil context, as the vagueness doctrine does. *See Vill. of Hoffman Estates v. Flipside, Hoffman Estates*, 455 U.S. 489, 498, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982) (discussing vagueness in the civil context).

It is thus clear that while the various doctrines protecting the right to fair notice may overlap, they are not necessarily identical in scope. *See Rogers v. Tennessee*, 532 U.S. 451, 460, 121 S.Ct. 1693, 149 L.Ed.2d 697 (2001) (noting that the fact "that the Due Process and *Ex Post Facto* Clauses safeguard common interests" does not "compel extending the strictures of the *Ex Post Facto* Clause" to cover the same government actions as the Due Process Clause).

The application of the *ex post facto* doctrine is broader in scope than the application of the rule of lenity. The *ex post facto* doctrine applies to any penal enactment that retrospectively disadvantages a criminal offender, whether or not it increases a criminal sentence, *see Weaver*, 450 U.S. at 29, 32 n. 17, 101 S.Ct. 960, and applies to regulations governing the conditions of imprisonment as well as to the length of sentences. *See id.* at 33, 101 S.Ct. 960 (framing the relevant inquiry as "[w]hether a retrospective state criminal statute ameliorates or worsens conditions imposed by its predecessor").[3] Thus, "a

---

2. The two doctrines are also distinct in that the rule of lenity has an institutional purpose not shared by the *ex post facto* doctrine. The rule of lenity protects the principle that "because of the seriousness of criminal penalties, and because criminal punishment usually represents the moral condemnation of the community, legislatures and not courts should define criminal activity," *United States v. Bass*, 404 U.S. 336, 348, 92 S.Ct. 515, 30 L.Ed.2d 488 (1971), which stems from "'the instinctive distaste against men languishing in prison unless the lawmaker has clearly said they should.'" *Id.* (quoting H. Friendly, *Mr. Justice Frankfurter and the Reading of Statutes, in* Benchmarks 196, 209 (1967)). *See Babbitt v. Sweet Home Chapter of Cmtys. for a Great Or.*, 515 U.S. 687, 704 n. 18, 115 S.Ct. 2407, 132 L.Ed.2d 597 (1995). This institutional concern is triggered by ambiguity, not by retroactivity, which reinforces the point that the two doctrines should be analyzed in light of their different purposes.

3. The *ex post facto* doctrine does not apply to all regulation of matters that might be described in ordinary English as "criminal." Some regulation of matters pertaining to the criminal process is "procedural" in nature and therefore not subject to *ex post facto* analysis. *See Dobbert v. Florida*, 432 U.S. 282, 292–94, 97 S.Ct. 2290, 53 L.Ed.2d 344 (1977) (holding "procedural" a statute that removed the possibility that a jury could make an unreviewable recommendation against a death sentence); *id.* at 292 n. 6, 97 S.Ct. 2290 (noting that a "procedural" change may be beyond the scope of the *ex post facto* doctrine even where it disadvantages a defendant). Thus, it cannot be taken for granted that the word "criminal" in any context encompasses all matters pertaining to the criminal justice process.

statute may be retrospective even if it alters punitive conditions outside the sentence." [4] *Id.* at 32, 101 S.Ct. 960. We have found no case in which the rule of lenity was applied to matters "outside the sentence." *See Simpson v. United States,* 435 U.S. 6, 14–15, 98 S.Ct. 909, 55 L.Ed.2d 70 (1978) (discussing cases in which the rule of lenity applies to criminal sentences).

The reason the *ex post facto* doctrine is broader than the rule of lenity in the area of sentencing administration is that there is a greater potential for unfairness when a legislature changes the law pertaining to a criminal offender's sentence than when the legislature merely leaves a question open for future regulation by an administrative agency. This is demonstrated by the case of *Lynce v. Mathis,* which dealt with an *ex post facto* challenge to an unusual series of actions by the Florida legislature. 519 U.S. at 435, 117 S.Ct. 891. In 1983 and thereafter, that legislature authorized the award of early release credits to prison inmates when the population of the state prison system exceeded predetermined levels. In 1992, the legislature passed another statute cancelling the credits for certain classes of offenders after the credits had been awarded—indeed, after the prisoners had been released. *Id.* at 437–39, 117 S.Ct. 891. When the legislature revoked the credits, some former prisoners were ordered back into jail, although their underlying conduct had not changed. *Id.* at 447, 117 S.Ct. 891. The Supreme Court found that these legislative actions were subject to the restraints of the *ex post facto* doctrine, whether or not the overcrowding credits pertained in any way to the original sentence. *Id.* at 445, 117 S.Ct. 891.

■ *Lynce* demonstrates why it is necessary that sentencing credits be treated as criminal for *ex post facto* purposes: the *ex post facto* doctrine condemns legislative acts that offend our fundamental sense that the government should not make more harsh the law governing the treatment of convicted criminals after their criminal acts are in the past.[5] The rule of lenity, however, deals with different concerns and employs a different analysis, and so it is not remarkable that the scopes of these doctrines should also differ or that we should consider a particular statute to be "criminal" in a way that implicates one doctrine but not the other. Accordingly, we decline to reconsider our holding that

---

**4.** Some matters pertaining to the treatment of criminal offenders are within the scope of the *ex post facto* doctrine, while others are not. The doctrine has been applied to a law that required the prison warden to keep secret from condemned prisoners the day and time of their execution where that law was applied retrospectively to prisoners whose crimes preceded its enactment. *In re Medley,* 134 U.S. 160, 172, 10 S.Ct. 384, 33 L.Ed. 835 (1890). The place and time at which an inmate was to be hanged and the question of whether the hanging would be visible to the public or the press, however, were held by the Supreme Court not to be within the scope of the doctrine, because they are questions "that do not affect his substantial rights." *Holden v. Minnesota,* 137 U.S. 483, 491, 11 S.Ct. 143, 34 L.Ed. 734 (1890).

**5.** The greater harm becomes clear if we imagine two highways. On the first, no speed limit is posted. The motorists are at a disadvantage, because they must guess the appropriate speed. On the second highway, a sign announces a speed limit of fifty-five miles per hour—but after a car goes by, the sign electronically alters itself to show a speed limit of twenty miles per hour. Motorists ticketed for violating the lower speed limit are understandably upset. Our sense of fairness is violated both by uncertainty in the law and by retrospective changes, but the need for greater protection in the *ex post facto* context is clear.

§ 3624(b) is not criminal for purposes of the rule of lenity.

## II. Adequate Notice Was Given By Regulation

It is important to note that, even if we accepted Sash's argument that § 3624(b) is a "criminal" regulation in this context, we would find that adequate notice was given by the BOP regulations that interpreted it. Sash argues that our holding that the rule of lenity does not apply to § 3624(b) implies that we believe the rule of lenity, were it applicable, would have to be applied prior to *Chevron* deference. This is not the case.

■ The Supreme Court has rejected the idea that the rule of lenity should trump the deference we traditionally afford to reasonable administrative regulations. *See Babbitt,* 515 U.S. at 704, 115 S.Ct. 2407 (holding that EPA's interpretation of a statute was reasonable and deserving of deference even though the stat-

ute was criminally enforced). In *Babbitt,* the Court noted:

> We have never suggested that the rule of lenity should provide the standard for reviewing facial challenges to administrative regulations whenever the governing statute authorizes criminal enforcement. Even if there exist regulations whose interpretations of statutory criminal penalties provide such inadequate notice of potential liability as to offend the rule of lenity, the "harm" regulation, which has existed for two decades and gives a fair warning of its consequences, cannot be one of them.

*Id.* at 704 n. 18, 115 S.Ct. 2407. The Court thus left open the possibility that some regulatory interpretations of criminal statutes could be inadequate for purposes of fair warning, but clearly indicated that an administrative regulation may give adequate notice of criminal consequences for purposes of the rule of lenity.[6]

Indeed, the Supreme Court's observation that defendants and judges routinely

---

6.  Sash relies on the recent case of *National Cable & Telecommunications Association v. Brand X Internet Services,* —— U.S. ——, ——, 125 S.Ct. 2688, 2699, 162 L.Ed.2d 820 (2005) ("*Brand X*"), for the proposition that the rule of lenity should apply prior to *Chevron* deference here. In *Brand X,* the Supreme Court considered whether a prior judicial interpretation of a statute can trump an implementing agency's later contrary interpretation. *Id.* at 2700–02. The Court held that "[a] court's prior judicial construction of a statute trumps an agency construction otherwise entitled to *Chevron* deference only if the prior court decision holds that its construction follows from the unambiguous terms of the statute and thus leaves no room for agency discretion." *Id.* at 2700. The Supreme Court found that the lower court had erred by holding a later agency interpretation precluded by a prior judicial interpretation where the judicial interpretation did not find the statute unambiguous. *Id.* at 2702.

In the passage upon which Sash relies, the Supreme Court noted that *in the prior judicial interpretation,* the court of appeals had "invoked no other rule of construction (such as the rule of lenity) requiring it to conclude that the statute was unambiguous to reach its judgment." *Id.* This language does not imply that the court of appeals should have relied upon the rule of lenity prior to *Chevron* in its later review of the agency's interpretation. Rather, it means that if the court, prior to an agency's interpretation, has found a statute unambiguous with the help of the rule of lenity, that finding will later be binding on the implementing agency. In the present case, the agency interpretation was issued before this Court confronted the question it resolved, so *Brand X* is not relevant here.

Neither this opinion nor our earlier opinion suggest that the rule of lenity never applies in the administrative context. We find only that where an agency gives clear notice of the meaning of a statute by regulation, and where it is reasonable to charge defendants with notice of the agency's interpretation, *Chevron* deference will apply prior to the rule of lenity.

consider good time calculations in their decisions about plea bargains and sentencing supports our holding that there is no notice problem in this case. *See Weaver,* 450 U.S. at 32, 101 S.Ct. 960 ("[A] prisoner's eligibility for reduced imprisonment is a significant factor entering into both the defendant's decision to plea bargain and the judge's calculation of the sentence to be imposed."). Whether or not it is appropriate in all circumstances to charge citizens with knowledge of administrative regulations, it is fair for us to charge a defendant with notice of good time regulations for purposes of the rule of lenity. Where a statute properly delegates a question of sentencing administration to an agency via ambiguity, *see Chevron,* 467 U.S. at 843, 104 S.Ct. 2778, and where the agency properly interprets that regulation in a way that gives ample notice to all potential offenders, *see Sash,* 428 F.3d at 136, there can be no question that adequate notice has been given for purposes of the rule of lenity.

Here, neither we nor a prospective criminal need "guess as to what Congress intended," *Ladner v. United States,* 358 U.S. 169, 178, 79 S.Ct. 209, 3 L.Ed.2d 199 (1958), because Congress delegated to the BOP, via the ambiguity in § 3624(b), the authority to determine how sentencing credit should be calculated, and the BOP, acting pursuant to that delegation, provided fair notice of the terms that would govern the administration of sentencing credit.

## CONCLUSION

For the reasons discussed, the petition for rehearing by the panel is DENIED.