WILLIAM PRYOR, Circuit Judge,
joined by JULIE CARNES, Circuit Judge,
respecting the denial of rehearing en banc;
A majority of the Court has voted not to rehéar en banc our decision in this appeal, United States v. Matchett, 802 F.3d 1185 (11th Cir. 2015), which held that the advisory sentencing guidelines cannot be challenged as void for vagueness. As members of the panel (and coincidentally the only members of this Court to have served on the United States Sentencing Commission), we write to explain why we agree with that decision.
We divide our discussion in two parts. First, we explain that Matchett is correct because the vagueness doctrine applies only to laws that regulate the primary conduct of private ■ citizens. Advisory sentencing guidelines regulate judges, not private individuals; they guide judicial discretion within a statutory range. Advisory sentencing- guidelines do not define crimes or fix punishments. Second, we explain that Matchett is hot worthy of en banc rehearing.
A. Matchett Is Correct.
Our opinion held that advisory sentencing guidelines cannot be void- for vagueness under the Due Process Clause of the Fifth Amendment. See id. at 1193-96. We reaffirm that holding. To explain why, we begin with a brief history of the federal sentencing guidelines.'
Before the Civil War, Congress enacted very few criminal laws and “crime control was left largely to the states.” Sara Sun Beale, Federalizing Crime: Assessing the Impact on the Federal Courts, 543 Annals Am. Acad. Pol; & Soc. Sci. 39, 40 (1996). The states “uniformly followed the common-law practice of making death the exclusive and mandatory sentence for certain specified offenses.” Woodson v. North Carolina, 428 U.S. 280, 289, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976); see also Williams v. New York, 337 U.S. 241, 247-48, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949). All crimes “had a defined punishment,” and “the period of incarceration was generally prescribed with specificity by the legislature.” llene H. Nagel, Structuring Sentencing Discretion: The New Federal Sentencing Guidelines, 80 J. Crim. L. & Criminology 883, 892 (1990).
After the Civil War, this system of fixed sentencing was gradually replaced with individualized sentencing. See id. at 893-95; United States v. Grayson, 438 U.S. 41, 45-46, 98 S.Ct. 2610, 57 L.Ed.2d 582 (1978). Legislatures enacted broad statutory ranges, and judges began tailoring sentences to individual defendants by considering “the circumstances of the offense *1120 together with the character and propensities of the offender.” Pennsylvania ex rel. Sullivan v. Ashe, 302 U.S. 51, 55, 58 S.Ct. 59, 82 L.Ed. 43 (1937); see also Pepper v. United States, 562 U.S. 476, 487-88, 131 S.Ct. 1229, 179 L.Ed.2d 196 (2011). “So long as sentencing judges stayed within the statutory boundaries, they had unbridled discretion to arrive at any sentence they pleased.” United States v. Irey, 612 F.3d 1160, 1180 (11th Cir. 2010) (en banc). As Judge Marvin Frankel desci'ibed the state of sentencing in 1973, “The sentencing powers of the judges [were] ... so far unconfined that, except for frequently monstrous maximum [statutory] limits, they [were] effectively subject to no law at all.” Marvin E. Frankel, Criminal Sentences: Law Without Order 8 (1973).
Although individualized sentencing was less draconian than fixed sentencing, it produced new problems. Because sentencing judges had unbridled discretion and no real standards to guide them, “[s]erious disparities in sentences ,,. were common.” Mistretta v. United States, 488 U.S. 361, 365, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989), “[Jjudges of widely varying attitudes on sentencing, administering statutes that confer[red] huge measures of discretion, mete[d] out widely divergent sentences where the divergences [were] explainable only by the variations among the judges, not by material differences in the defendants or their crimes.” Frankel, supra, at 21. And because sentencing judges focused on the individual history and characteristics of each offender, “the offender’s race, sex, religion, income, education, occupation and other status characteristics were found to influence judicial outcomes.” Nagel, supra, at 895.
Despite its flaws, individualized sentencing remains perfectly constitutional. “[L]egislatures remain free to decide how much discretion in sentencing should be reposed in the judge or jury in noncapital cases.... ” Lockett v. Ohio, 438 U.S. 586, 603, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978). The Supreme Court has “never doubted the authority of a judge to exercise broad discretion in imposing a sentence within a statutory range.” United States v. Booker, 543 U.S. 220, 233, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005).
Because of the disparities associated with individualized sentencing, see Koon v. United States, 518 U.S. 81, 92, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996), and following a massive expansion of federal criminal law in the twentieth century, see Beale, supra, at 41-43, Congress enacted the Sentencing Reform Act of 1984, which created the United States Sentencing Commission and empowered it to promulgate federal sentencing guidelines, see 28 U.S.C. §§ 991, 994. The first guidelines came into effect in 1987. See United States Sentencing Guidelines Manual (Nov. 1987). They calculated a narrow sentencing range by assigning numeric values to the type of offense, the characteristics of the offense, the offender’s criminal history, and other factors. See id. The initial guidelines were also mandatory: district judges were required to impose a sentence within the guideline range, subject to limited departures, see 18 U.S.C. § 3553(b)(1), and appellate courts reviewed departures from the guidelines de novo, see id. § 3742(e).
The mandatory guidelines were quickly challenged as unconstitutional. The Supreme Court rebuffed a separation-of-powers challenge to the guidelines in Mistretta v. United States, 488 U.S. 361, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989). The Court concluded that the mandatory guidelines were not an impermissible exercise of the legislative power because they do not regulate primary conduct:
Although the Guidelines are intended to have substantive effects on public behav *1121 ior (as do the rules of procedure), they do not bind ■ or regulate the primary conduct of the public or vest in the Judicial Branch the legislative responsibility for establishing minimum and maximum penalties for every crime. They do no more than fetter the discretion of sentencing judges to do what they have done for generations — impose sentences within the broad limits established by Congress.
Id. at 396,109 S.Ct, 647 (emphasis added). The mandatory guidelines were challenged again in United States v. Booker, 643 U.S. 220, 126 S.Ct. 738, 160 L.Ed.2d 621 (2006) — this time under the Fifth and Sixth Amendments. A majority of the Supreme Court held that the mandatory guidelines were unconstitutional because they allowed judges to find facts, by a preponderance of the evidence, that increased a defendant’s sentence. See id. at 230-44, 126 S.Ct. 738. Other than prior convictions, “[a]ny fact that, by law, increases the penalty for a crime” must be admitted by the defendant or found by a jury beyond a reasonable doubt because such facts are not mere sentencing provisions; they are elements of the crime. Allegne v. United States, — U.S. —, 133 S.Ct. 2151, 2155, 186 L.Ed.2d 314 (2013); see also Apprendi v. New Jersey, 530 U.S. 466, 476-90, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). To remedy this constitutional defect, a different majority of the Booker Court invalidated the statutory provisions that made the guidelines mandatory. Booker, 543 U.S. at 245, 125 S.Ct. 738. What remained were guidelines that are “effectively advisory.” Id.
Now that the guidelines are advisory, they continue to play an important role in sentencing, but they do not and cannot play a decisive one. On the one hand, the guidelines are the “starting point” for sentencing and the “lodestar.” Molina-Martinez v. United States, — U.S. —, 136 S.Ct. 1338, 1346, 194 L.Ed.2d 444 (2016). District courts must calculate the guideline range correctly, Gall v. United States, 552 U.S. 38, 51, 128 S.Ct. 586, 169 L.Ed.2d 445 (2007), and the failure to do so can constitute plain error because “[i]n the usual case ... the selected Guidelines range will affect the sentence,” Molina-Martinez, 136 S.Ct. at 1346. And appellate courts can presume that a sentence within the guideline range is reasonable, Rita v. United States, 551 U.S. 338, 347, 127 S.Ct. 2456, 168 L.Ed.2d 203 (2007), although this Court does not do so, United States v. Hunt, 526 F.3d 739, 746 (11th Cir. 2008). On the other hand, the guidelines are just one factor among many to be balanced against six other statutory sentencing factors, 18 U.S.C. § 3553(a), See Pepper, 562 U.S. at 490, 131 S.Ct. 1229; see also 18 U.S.C. § 3661 (“No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence.”). District courts commit reversible error if they “treat[] the Guidelines as mandatory,” Gall, 552 U.S. at 51, 128 S.Ct. 586, and they cannot “presume that a sentence within the applicable Guidelines rangé is reasonable,” Nelson v. United States, 555 U.S. 350, 352, 129 S.Ct. 890, 172 L.Ed.2d 719 (2009). Appellate courts cannot presume that a deviation from the guideline range is unreasonable, Rita, 551 U.S. at 354-55, 127 S.Ct. 2456. A district, judge may even refuse to follow the guidelines “based on [a] policy disagreement” with the Sentencing Commission, Spears v. United States, 555 U.S. 261, 264, 129 S.Ct. 840, 172 L.Ed.2d 596 (2009) (citing Kimbrough v. United States, 552 U.S. 85, 128 S.Ct. 558, 169 L.Ed.2d 481 (2007)).
*1122 The question presented in this appeal was whether the advisory guidelines can be void for vagueness. The vagueness doctrine states that “a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law.” Connally v. Gen. Constr. Co., 269 U.S. 385, 391, 46 S.Ct. 126, 70 L.Ed. 322 (1926). As the decisions of the Supreme Court make clear, the vagueness doctrine applies only to laws that regulate private conduct— laws that define crimes, e.g., City of Chicago v. Morales, 527 U.S. 41, 119 S.Ct. 1849, 144 L.Ed.2d 67 (1999); Kolender v. Lawson, 461 U.S. 352, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983); Colautti v. Franklin, 439 U.S. 379, 99 S.Ct. 675, 58 L.Ed.2d 596 (1979); Smith v. Goguen, 415 U.S. 566, 94 S.Ct. 1242, 39 L.Ed.2d 605 (1974); Papachristou v. City of Jacksonville, 405 U.S. 156, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972); Winters v. New York, 333 U.S. 507, 68 S.Ct. 665, 92 L.Ed. 840 (1948); Lanzetta v. New Jersey, 306 U.S. 451, 59 S.Ct. 618, 83 L.Ed. 888 (1939); Cline v. Frink Dairy Co., 274 U.S. 445, 47 S.Ct. 681, 71 L.Ed. 1146 (1927); United States v. L. Cohen Grocery Co., 255 U.S. 81, 41 S.Ct. 298, 65 L.Ed. 516 (1921); Int’l Harvester Co. of Am. v. Kentucky, 234 U.S. 216, 34 S.Ct. 853, 58 L.Ed. 1284 (1914); laws that fix sentences, e.g., Johnson v. United States, — U.S. —, 135 S.Ct. 2551, 192 L.Ed.2d 569 (2015); laws that restrict speech, e.g., FCC v. Fox Television Stations, Inc., — U.S. —, 132 S.Ct. 2307, 183 L.Ed.2d 234 (2012); Gentile v. State Bar of Nevada, 501 U.S. 1030, 111 S.Ct. 2720, 115 L.Ed.2d 888 (1991); Keyishian v. Bd. of Regents of Univ. of State of N.Y., 385 U.S. 589, 87 S.Ct. 675, 17 L.Ed.2d 629 (1967); Baggett v. Bullitt, 377 U.S. 360, 84 S.Ct. 1316, 12 L.Ed.2d 377 (1964); Cramp v. Bd. of Pub. Instruction of Orange Cty., 368 U.S. 278, 82 S.Ct. 275, 7 L.Ed.2d 285 (1961); and laws that regulate businesses, e.g., A.B. Small Co. v. Am. Sugar Ref. Co., 267 U.S. 233, 45 S.Ct. 295, 69 L.Ed. 589 (1925).
The vagueness doctrine reflects two “connected but discrete” concerns: notice and arbitrary enforcement. Fox Television Stations, 132 S.Ct. at 2317. Notice means that a law does not “give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly.” Grayned v. City of Rockford, 408 U.S. 104, 108, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972). Arbitrary enforcement means that a law leaves government actors “free to decide, without any legally fixed standards, what is prohibited and what is not in each particular case.” Giaccio v. Pennsylvania, 382 U.S. 399, 402-03, 86 S.Ct. 518, 15 L.Ed.2d 447 (1966). The guidelines implicate neither of these concerns. See United States v. Hurlburt, 835 F.3d 715, 726, No. 14-3611, 2016 WL 4506717 (7th Cir. Aug. 29, 2016) (en banc) (Hamilton, J., dissenting) (“After all, how can non-binding advice be unconstitutionally vague?”).
With respect to notice, the advisory guidelines cannot notify a defendant of what sentence he will receive because they are just that — advisory. Consider a person who is thinking about committing a federal crime and wants to know what punishment he will receive if he gets caught. He can identify a hard ceiling (the statutory maximum sentence) and a hard floor (the statutory minimum sentence). But he cannot identify the sentence he will receive within the statutory range. He could calculate his guideline range, but the guidelines are just one of seven sentencing factors that the sentencing judge will consider. The other six include factors like “the history and characteristics of the defendant”; the need to “promote respect for the law,” to “provide just punishment,” to “afford adequate *1123 deterrence,” and to “provide the defendant with needed ... correctional treatment”; and the need to “avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.” 18 U.S.C. § 3553(a). Each of these factors is “vague and ... hopelessly open-ended.” United States v. Dean, 414 F.3d 725, 729 (7th Cir. 2005). Even if a person could predict what a judge would find relevant about his “history and characteristics” or what a judge thinks makes a punishment “just,” the sentencing statute makes “no attempt to give weights to the different factors.” United States v. Siegel, 753 F.3d 705, 707 (7th Cir. 2014). “[Wjithout weighting its factors a multifactor test is not a test but a list, and cannot yield an objective result.” Id.
The'data collected by the Sentencing Commission reveal the difficulties of trying to predict a sentence based on the guidelines. On average, the odds of receiving a sentence within the guideline range are worse than a coin flip. See U.S. Sentencing Comm’n, 2015 Sourcebook of Federal Sentencing Statistics tbl. N (reporting that 47.3 percent of defendants received a sentence within the guideline range in fiscal year 2015). If a defendant is a career offender, then the odds are even worse— essentially 3:1 against. See U.S. Sentencing Comm’n, Report to the Congress: Career Offender Sentencing Enhancements . 36 (2016) [hereinafter Career Offender Report:] (reporting that 27.5 percent of career offenders received a sentence within the guideline range in fiscal year 2014).
The advisory nature of the guidelines explains why the Supreme Court held in Irizarry v. United States that “[a]ny expectation subject to due process protection ... that a criminal defendant would receive a sentence within the presumptively applicable Guidelines range did not survive our decision in [Booker], which invalidated
the mandatory features, of the Guidelines.” 553 U.S. 708, 713, 128 S.Ct. 2198, 171 L.Ed.2d 28 (2008). “The due process concerns that ... require notice in a world of mandatory Guidelines no longer” apply. Id. at 714, 128 S.Ct. 2198. Those concerns include the vagueness doctrine. See United States v. Wivell, 893 F.2d 156, 159 (8th Cir. 1990). The advisory guidelines do not implicate arbitrary enforcement either. Our dissenting colleagues criticize our decision for allegedly failing to consider arbitrary enforcement separately from notice, but these concerns are “connected,” Fox Television Stations, 132 S.Ct. at 2317. And the panel opinion concluded that the guidelines implicate neither notice nor arbitrary enforcement for the same overarching reason. Both aspects of the vagueness doctrine are .concerned only with laws that regulate the primary conduct of private individuals. See id. (describing the vagueness doctrine as governing “laws which regulate persons or entities”); Gen. Constr. Co., 269 U.S. at 391, 46 S.Ct. 126 (describing the vagueness doctrine as governing laws that “forbid[ ] or require[ ] the doing of an act”); United States v. Brierton, 165 F.3d 1133, 1139. (7th Cir. 1999) (“[T]he vagueness doctrine presumes a law that attempts to proscribe or prescribe conduct.”); Wivell, 893 F.2d at 159 (“[Bjoth theories supporting the vagueness doctrine presume a law that attempts to proscribe or prescribe conduct.”); El-Shifa Pharm. Indus. Co. v. United States, 607 F.3d 836, 856 n.4 (D.C. Cir. 2010) (en banc) (Kava-naugh, J., concurring in the judgment) (describing the vagueness doctrine as governing laws that “regulatfe] private conduct”); Cass R. Sunstein, Problems with Rules, 83 Calif. L. Rev. 953, 968 (1995) (“[T]he ‘void for vagueness’ doctrine requires the state to set forth clear guidance before it may punish private conduct.”).
Arbitrary enforcement, for purposes of the vagueness doctrine, means arbitrary *1124 enforcement of laws that regulate the primary conduct of private individuals — hence the word “enforcement.” See Papachristou, 405 U.S. at 170, 92 S.Ct. 839; Parker v. Levy, 417 U.S. 733, 775, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974). Vague laws allow for arbitrary enforcement because they do not meaningfully limit who the police can arrest, who prosecutors can prosecute, and who judges. and juries can convict. See Lawson, 461 U.S. at 358-60, 103 S.Ct. 1855; Grayned, 408 U.S. at 108-09, 92 S.Ct. 2294. In the federal context, one of the main concerns behind arbitrary enforcement is the separation of powers: “In our system, ... defining crimes and fixing penalties are legislative, not judicial, functions,” and'vague statutes require courts to “fíll[] gaps so large that doing so becomes . essentially legislative.” United States v. Evans, 333 U.S. 483, 486-87, 68 S.Ct. 634, 92 L.Ed. 823 (1948); accord Lawson, 461 U.S. at 358 n.7, 103 S.Ct. 1855 (citing United States v. Reese, 92 U.S. 214, 221, 23 L.Ed. 563 (1875)); Goguen, 415 U.S. at 575, 94 S.Ct. 1242.
Judge Martin’s dissent contends that the vagueness doctrine is not limited to laws that regulate primary conduct, but her two counterexamples only support the opposite conclusion. First, Judge Martin’s dissent points out that the vagueness doctrine applies to sentencing statutes, see United States v. Batchelder, 442 U.S. 114, 123, 99 S.Ct. 2198, 60 L.Ed.2d 755 (1979). But statutes that specify facts that increase a defendant’s mandatory minimum or maximum sentence do regulate primary conduct because they define the elements of the crime. See Alleyne, 133 S.Ct. at 2158. After Booker, the advisory guidelines -do no such thing. See Booker, 543 U.S. at 233, 125 S.Ct. 738. Second, Judge Martin’s dissent asserts that the Supreme Court applied the vagueness doctrine to a statute that did not regulate primary conduct in Giaccio v. Pennsylvania, 382 U.S. 399, 86 S.Ct. 518, 15 L.Ed.2d 447 (1966). In Giac-cio, the Supreme Court invalidated a Pennsylvania statute that required acquitted defendants to pay the costs of their prosecution. See id. at 403, 86 S.Ct. 518. A jury could award the costs as a “sentence” if it found that the defendant was “guilty of some misconduct less than the offense which is charged but nevertheless misconduct of some kind as a result of which he should be required to pay some penalty short of conviction (and) ... his misconduct has given rise to the prosecution.” Id. at 403-04, 86 S.Ct. 518. This statute as construed by the Pennsylvania courts plainly regulated primary conduct: it imposed a penalty (costs, and possibly jail time) on an acquitted defendant (a private individual) based on his out-of-court conduct (the misconduct that led to his prosecution). Contrary to Judge Martin’s characterization, the statute in Giaccio did not impose administrative court costs; it imposed a penalty for out-of-court conduct by a private citizen. See Schilb v. Kuebel, 404 U.S. 357, 370, 92 S.Ct. 479, 30 L.Ed.2d 502 (1971) (distinguishing the statute in Giac-cio from “an administrative cost imposed upon ... guilty and innocent alike”). The Supreme Court has never applied the vagueness doctrine to a statute that did not regulate primary conduct.
We know that the federal sentencing guidelines do not regulate primary conduct. In Mistretta, the Supreme Court held that the guidelines “do not bind or regulate the primary conduct of the public.” 488 U.S. at 396, 109 S.Ct. 647.' The guidelines “fetter the discretion of sentencing judges”; they do not “establish ] minimum and maximum penalties” for crimes. Id.; accord Brierton, 165 F.3d at 1139 (“The Guidelines do not establish the illegality of any conduct. Rather, they —are designed to assist and limit the discretion of the sentencing judge.”); Wivell, 893 F.2d *1125 at 160 (“The Sentencing Guidelines do not define illegal conduct: they are directives to judges for their guidance in sentencing convicted criminals, not to citizens at large.”).
The term “arbitrary enforcement” makes little sense in this context. If judges exercising their sentencing discretion are “enforcing” the law against individuals, then the former system of individualized sentencing should have been void for vagueness. After all, the former system of individualized sentencing imposed no standards on judges, provided no notice to individual defendants, and resulted in disparate, arbitrary, and discriminatory sentences. See Frankel, supra, at 5. If individualized sentencing, which gives judges unbridled discretion, is constitutional, see Lockett, 438 U.S. at 603, 98 S.Ct. 2964, then vague sentencing guidelines, which only guide that discretion,, are too.
The decision of the Supreme Court in Peugh v. United States, — U.S. —, 133 S.Ct. 2072, 186 L.Ed.2d 84 (2013), does not mean that the guidelines can be void for vagueness. Peugh held that the guidelines can violate the Ex Post Facto Clause, see id. at 2088, but it said nothing about the vagueness doctrine. In fact, a plurality of the Court explained that its decision did not implicate the holding in Irizarry that “a defendant does not have an ‘expectation subject to due process protection’ that he will be sentenced within the Guidelines range.” Id. at 2085 (plurality opinion) (quoting Irizarry, 553 U.S. at 713-14, 128 S.Ct. 2198). And for good reason: the Ex Post Facto Clause and the vagueness doctrine have different scopes. Then-Judge Sotomayor has explained in detail why, although the Ex Post Facto Clause and the vagueness doctrine “share a concern for notice,” “they are not necessarily identical in scope.” Sash v. Zenk, 439 F.3d 61, 65 (2d Cir. 2006): Unlike the vagueness doctrine, “the Ex Post Facto Clause does not merely protect reliance interests. It also reflects . principles of ‘fundamental justice.’ ” Peugh, 133 S.Ct. at 2085 (plurality opinion) (quoting Carmell v. Texas, 529 U.S. 513, 531, 120 S.Ct. 1620, 146 L.Ed.2d 577 (2000)); see also Sash, 439 F.3d at 64-66. Specifically, the Ex Post Facto Clause is “broader” and “more expansive” because it “is concerned not just with notice, but with the inherent injustice associated with retroactivity itself.” Sash, 439 F.3d at 64-65. And the Ex Post Facto Clause is not limited to laws that-regulate primary.conduct. It applies to any change in law that “creates a ‘significant risk’ of a higher sentence,” Peugh, 133 S.Ct. at 2088 (majority opinion) — including, for example, changes to the rules of evidence, see id. at 2081 (citing Calder v. Bull, 3 U.S. 3 (Dall.) 386, 390, 1 L.Ed. 648 (1798) (opinion of Chase, j.)). That the guidelines can be ex post facto laws does not mean that they can be void for vagueness. Different doctrines with different purposes should be assessed differently. See Sash, 439 F.3d at 65 n.2.
Nor does the decision of the Supreme Court in Johnson v. United States, — U.S. —, 135 S.Ct. 2551, 192 L.Ed.2d 569 (2015), mean that the guidelines can be void for vagueness. Johnson held that the residual clause -of the Armed Career Criminal Act — a criminal statute that regulates primary conduct — was void for vagueness. See id. at 2557. The Court did not address the constitutionality of the career-offender guideline or any other guideline for that matter. Of course, the residual clause of the career-offender guideline is “virtually identical” to the residual clause of the Armed Career Criminal Act. United States v. Archer, 531 F.3d 1347, 1352 (11th Cir. 2008) (quoting United States v. Rainey, 362 F.3d 733, 735 (11th Cir. 2004)). So, if the guidelines are subject to the vagueness *1126 doctrine, then the residual clause of the career-offender guideline is void for vagueness because its language is virtually identical to the statutory language that was invalidated in Johnson. But that’s a big “if,” for the reasons given above, and Johnson says nothing whatsoever about the issue. See In re Embry, 831 F.3d 377, 380, No. 16-5447, 2016 WL 4056056 (6th Cir. July 29, 2016) (“Before a court could invoke Johnson to invalidate the residual clause of the Guidelines, it would have to resolve a threshold question: Do[es] the [vagueness doctrine] apply to the advisory Sentencing Guidelines? The answer to this gateway question is not self-evident.” (citation omitted)); Donnell v. United States, 826 F.3d 1014, 1015 (8th Cir.2016) (“Whether an advisory sentencing guideline is susceptible to a vagueness challenge is an open question in this circuit ... and the answer is not dictated by Johnson.”); United States v. Gonzalez-Longoria, 831 F.3d 670, 679-80, No. 15-40041, 2016 WL 4169127 (5th Cir. Aug. 5, 2016) (en banc) (Jones, J., concurring) (“Johnson itself did not specifically treat or address the Guidelines,” and “[n]o other Supreme Court case has directly confronted a vagueness challenge to the Guidelines or implied the propriety of such a challenge.”).
The dissents are troubled by the possibility that judges must apply a guideline with language that Johnson held was vague, but the task is not as .unusual or as daunting as they suggest. Johnson held that the language of the residual clause was too vague to be included in the Armed Career Criminal Act, a law that regulates primary conduct. See Johnson, 135 S.Ct. at 2557. But the advisory guidelines are directed to judges, not private citizens, and we tolerate much more vagueness in laws that regulate government actors than we do in laws that regulate private citizens. See Mahler v. Eby, 264 U.S. 32, 40-41, 44 S.Ct. 283, 68 L.Ed. 549 (1924) (distinguishing between vague statutes that provide discretion to government actors, which cannot be void for vagueness, and vague statutes that define crimes, which can); see also Nat’l Endowment for the Arts v. Finley, 524 U.S. 569, 587-88, 118 S.Ct. 2168, 141 L.Ed.2d 500 (1998) (“[T]he Government may allocate competitive funding according to criteria that would be impermissible were direct regulation of speech or a criminal penalty at stake.”); Robert C. Post, Reconceptualizing Vagueness: Legal Rules and Social Orders, 82 Calif. L. Rev. 491, 492 (1994) (“[T]he doctrine of undue discretion is most often used when laws are addressed to official decisionmakers, whereas vagueness doctrine is typically used when legal rules directly constrain the conduct of ordinary citizens-”).
Vague standards regulate government officials, including judges, all the time— searches must be “reasonable,” U.S. Const, amend. IV; trials must be “speedy,” id. amend. VI; and regulations must be “in the public interest,” 47 U.S.C. § 201(b). Consider the statutory sentencing factors: District judges must impose a sentence that is “sufficient, but not greater than necessary,” to “promote respect for the law,” to “provide just punishment,” and to “afford adequate deterrence,” among other things. 18 U.S.C. § 3553(a). And appellate judges must review whether a sentence is “unreasonable.” Booker, 543 U.S. at 261, 125 S.Ct. 738. All of these standards might be void for vagueness if they appeared in a statute that regulated private individuals. Cf. L. Cohen Grocery Co., 255 U.S. at 89, 41 S.Ct. 298 (explaining that the phrase “detrimental to the public interest” would be void for vagueness in a criminal statute); Finley, 524 U.S. at 588, 118 S.Ct. 2168 (explaining that the word “respect” is “undeniably opaque” and “could raise substantial vagueness concerns” if it “ap *1127 peared in a criminal statute or regulatory scheme”); EPA v. EME Homer City Generation, L.P., — U.S. —, 134 S.Ct. 1584, 1616, 188 L.Ed.2d 775 (2014) (Scalia, J., dissenting) (“One could hardly overstate the capaciousness of the word ‘adequate’ —”); Frink Dairy Co., 274 U.S. at 465, 47 S.Ct. 681 (holding that the phrase “reasonable profit” was void for vagueness in a criminal statute). But federal judges apply these standards every day and do so without a second thought. The dissents appear to think that there is a due-process right of judges to be free from interpreting vague laws in the exercise of their judicial duty. That “right” does not exist.
Furthermore, judges who must apply the residual clause of the career-offender guideline are not hopelessly adrift. Johnson held that the residual clause is vague in many of its applications, but it acknowledged that “there will be straightforward cases under the residual clause” and that “there is some conduct that clearly falls within the provision’s grasp.” 135 S.Ct. at 2560-61. Judges will continue to see examples of “obviously risky crimes” that “clearly pose a serious t potential risk of physical injury to another.” Id. Indeed, federal circuit and district judges interpreted this language thousands of times before Johnson. The Supreme Court did so four times,as well. That caselaw is still on the books, and it can guide judges as they continue to do what they have always done when interpreting vague provisions directed at government officials: “liquidating] and ascertaining]” their meaning through “a series of particular discussions and adjudications,” The Federalist No. 37, at 236 (James Madison) (Carl Van Doren ed., Easton Press, collector’s ed. 1979).
Of course, a guideline that is too vague is not a good guideline. Fortunately, mechanisms short of constitutional invalidation already exist to deal with bad guidelines. Most notably, the Sentencing Commission can and does repeal guidelines that are difficult to apply. In fact, it did so here.
As of August 1, 2016, the residual clause of the career-offender guideline no longer exists. See U.S. Sentencing Comm’n, Amendment to the Sentencing Guidelines 2 (Jan. 21, 2016). The Commission concluded that the residual clause should be repealed “as a matter of policy” based in part on the “considerable application difficulties” that the Supreme Court outlined in Johnson. Id. We have no reason to doubt that the Commission will continue to fulfill its ongoing duty to “periodically ... review and revise ... the guidelines” in the light of new data and commentary from all sectors of the federal criminal justice system. 28 U.S.C. § 994(o).
In addition to the Sentencing Commission, individual judges can vary from vague guidelines on policy grounds. See Spears, 555 U.S. at 264-66, 129 S.Ct. 840. That a guideline cannot be applied consistently could be a.legitimate reason for a district judge to conclude that the guideline does not, for example, “avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct,” 18 U.S.C. § 3553(a)(6). We do not mean to suggest that every problem can be solved by the “noblesse oblige” of sentencing commissioners and district judges, Fox Television Stations, 132 S.Ct. at 2318 (quoting United States v. Stevens, 559 U.S. 460, 480, 130 S.Ct. 1577, 176 L.Ed.2d 435 (2010)); but as the author of Johnson was fond of reminding us, “not every problem was meant to be solved by the United States Constitution,” Herrera v. Collins, 506 U.S, 390, 428 n.*, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993) (Scalia, J., concurring).
Judge Rosenbaum’s concurrences on this subject, appended to her dissent, fret that, unless the guidelines can be chai- *1128 lenged as unconstitutionally vague, nothing would prevent the Sentencing Commission from issuing a nonsensical guideline about "cheese,” see Rosenbaum Dissent app. at 1144, but this concern is unfounded. For one, Judge Rosenbaum’s concurrences fail to appreciate the difference between vagueness and unintelligibility. Vagueness is “[u]ncertain breadth, of meaning; unclarity resulting from abstract expression.” Vagueness, Black’s Law Dictionary (10th ed. 2014). Unintelligibility is “[i]ncompre-hensibility; the quality of being incapable of being understood.” Unintelligibility, Black’s Law Dictionary. “Vagueness ... is often intentional, as general terms (reasonable time, best efforts, equal protection) are adopted to cover a multitude of situations that cannot practicably be spelled out in detail or even foreseen.” Antonin Scalia & Bryan A. Garner, Reading Law 32-33 (2012). But “[a]n unintelligible text is inoperative.” Id. at 134. Judges would not apply a gibberish-filled guideline about “cheese” because such a guideline would be unintelligible. See id. at' 134-39. The vagueness doctrine would have nothing to do with it. See Johnson, 135 S.Ct. at 2568 n.3 (Thomas, J,, ■ concurring in the judgment); Ralph W. Aigler, Legislation in Vague or General Terms, 21 Mich. L. Rev. 831, 834 (1923). For another, the members of the United States Sentencing Commission take their oaths seriously and strive to craft guidelines that “provide certainty and fairness in meeting the purposes of sentencing,” 28 U.S.C. § 991(b)(1)(B). We know of no instance in which the Commission has intentionally or inadvertently constructed a “word salad,” Rosenbaum Dissent app. at 30.
Although we have little to lose if the guidelines cannot be void for vagueness, the converse is not true. Many provisions of the federal guidelines might not withstand scrutiny under the vagueness doctrine. See Matchett, 802 F.3d at 1196. See
also Hurlburt, 835 F.3d at 729, No. 14-3611, (Hamilton, J., dissenting) (suggesting that provisions for “sophisticated means,” “vulnerable victim,” “otherwise extensive” criminal activity, “relevant conduct,” and several departures could be found to be unconstitutionally vague) (citing United States Sentencing Guidelines Manual §§ 2Bl.l(b)(l)(10), 3Al.l(b), 3B1.1, 1B1.3). Twenty states also have sentencing guidelines, see generally Neal Kauder & Brian Ostrom, Nat’l Ctr. for State Courts, State Sentencing Guidelines: Profiles and Continuum (2008), and any interpretation of the Due Process Clause of the Fifth Amendment applies to the Due Process Clause of the Fourteenth Amendment, see Hurtado v. California, 110 U.S. 516, 534-35, 4 S.Ct. 292, 28 L.Ed. 232 (1884). A decision holding that the federal guidelines can be void for vagueness could lead to the invalidation of many state guidelines as well.,
Further on the horizon, a decision holding that the advisory guidelines can be void for vagueness would be in considerable tension with the rulings that have upheld the constitutionality of the sentencing guidelines. Mistretta held that the guidelines do not violate the separation of powers because they “do not bind or regulate the primary conduct of the’ public or establish ] minimum and maximum penalties for every crime.” Mistretta, 488 U.S. at 396, 109 S.Ct. 647. But if the guidelines can be void for vagueness because they are laws that fix punishments and regulate primary conduct, then the guidelines look more like an exercise of the legislative power that the Constitution vests exclusively in Congress, see Evans, 333 U.S. at 486, 68 S.Ct. 634. Booker held that the Fifth and Sixth Amendments require the guidelines to be advisory. But if the guidelines can be void for vagueness because they are the be-all and end-all of sentenc *1129 ing, then the guidelines look more presumptive and less advisory. See Kimbrough, 552 U.S. at 113-14, 128 S.Ct. 558 (2007) (Scalia, J., concurring) (“If there is any thumb on the scales[,] ... then the ‘advisory[5] Guidelines would, over a large expanse of their application, entitle the defendant to a lesser sentence but for the presence of certain additional facts found by judge rather than jury. This, as we said in Booker, would violate the Sixth Amendment.”). True, applying the Ex Post Facto Clause to the advisory guidelines did not undermine Booker because “the Sixth Amendment and Ex Post Facto Clause inquiries are analytically distinct.” Peugh, 133 S.Ct. at 2088. But the Sixth Amendment and the Due Process Clause are not so distinct; the Supreme Court often has linked them together. See, e.g., Irizarry, 553 U.S. at 713, 128 S.Ct. 2198; Yu Cong Eng v. Trinidad, 271 U.S. 500, 518, 46 S.Ct. 619, 70 L.Ed. 1059 (1926); L. Cohen Grocery Co., 255 U.S. at 92, 41 S.Ct. 298. See also Hurlburt, 835 F.3d at 727, No. 14-3611, (Hamilton, J., dissenting) (“If the Supreme Court extends the rationale of Peugh ... that result would be difficult to reconcile with the Booker remedy, which spared the Guidelines from Sixth Amendment challenges by making them advisory.”).
If advisory guidelines can be void for vagueness, then the task for sentencing commissions just got harder. Advisory guidelines are not always drafted with the precision of laws that regulate primary conduct; vagueness can be a virtue in the case-by-case world of sentencing. And a decision undermining the constitutionality of advisory guidelines would be unfortunate because, although they are not perfect, advisory guidelines . strike a much better balance between consistency, predictability, and flexibility than purely individualized sentencing and rigid fixed sentencing. “So to treat the due-process clause would hinder if not preclude ... progressive efforts to improve the administration of criminal justice.” Williams, 337 U.S. at 251, 69 S.Ct. 1079. See also Hurlburt, 835 F.3d at 729, No. 14-3611, (Hamilton, J., dissenting) (“[T]his pervasive vagueness in Guideline provisions is not a bug in the system. It is a feature. It is intended to provide sentencing judges with needed flexibility.”).
B. Matchett Is Not Worthy of En Banc Review.
This appeal also does not meet the traditional criteria for rehearing en banc. As we have explained, our decision is correct. Correct decisions are never worthy of en banc review.
Judge Martin’s dissent portrays Match-ett as a legal pariah, a decision that supposedly contradicts the “uniform view” of ten other circuits, see Martin Dissent at 1133-34 & n.l, but her math is hard to follow. Four circuits have held, in a published opinion, that the advisory guidelines can be void for vagueness. See Hurlburt, No. 14-3611; United States v. Calabretta, 831 F.3d 128, No. 14-3969, 2016 WL 3997215 (3d Cir. July 26, 2016); United States v. Pawlak, 822 F.3d 902 (6th Cir. 2016); United States v. Madrid, 805 F.3d 1204 (10th Cir. 2015). The other circuits cited in Judge Martin’s dissent merely assumed, based on the government’s concession, that the advisory guidelines could be void for vagueness. Such assumptions are not holdings and do not create precedent. See Casey v. United States, 343 U.S. 808, 808, 72 S.Ct. 999, 96 L.Ed. 1317 (1952). In fact, binding precedent in two of those circuits currently states that the guidelines cannot be void for vagueness. See Wivell, 893 F.2d at 160; United States v. Pearson, 910 F.2d 221, 223 (5th Cir. 1990). And several distinguished judges have explained why those precedents should still *1130 be good law after Johnson and Peugh. See United States v. Hurlburt, 835 F.3d at 726-30, No. 14-3611, (Hamilton, J., joined by Posner, J., Flaum, J., and Easterbrook, J., dissenting) (describing Matchett as “careful and persuasive”); Gonzalez-Longoria, 831 F.3d at 679-86, No. 15-40041, (en banc) (Jones, J., joined by Smith, J., concurring); United States v. Lee, 821 F.3d 1124, 1133-35 (9th Cir. 2016) (Ikuta, J., dissenting); United States v. Taylor, 803 F.3d 931, 933-35 (8th Cir. 2015) (Colloton, J., dissenting). In short, when Judge Martin’s dissent says “ten circuits,” it really means “four circuits and the Department of the Justice.” And Judge Martin’s dissent ignores the numerous state courts that have rejected the possibility that their sentencing guidelines could be void for vagueness. See, e.g., State v. Rourke, 773 N.W.2d 913, 922 (Minn. 2009); State v. Baldwin, 150 Wash.2d 448, 78 P.3d 1005, 1010-12 (2003) (en banc); Hall v. State, 767 So.2d 560, 562-63 (Fla. 4th DCA 2000), approved, 826 So.2d 268 (Fla. 2002); People v. McLeod, 143 Mich.App. 262, 372 N.W.2d 526, 528 (1985); State v. Mushrush, 135 Ohio App.3d 99, 733 N.E.2d 252, 259 (1999) (op. of Winkler, J.).
By my count, the circuits are split 5-3 and the states generally agree with Match-ett. Although conflict with other courts can be a compelling reason to rehear an appeal, that concern is less pressing when rehearing will, at best, move us from one side of the conflict to the other. The Supreme Court of the United States, not this Court, is best suited to resolve such disagreements. Indeed, the Supreme Court will soon consider whether the guidelines can be vague in Beckles v. United States, — U.S. —, 136 S.Ct. 2510, 195 L.Ed.2d 838 (2016), and its decision could settle the issue once and for all. Rehearing Matchett en banc would not be a wise use of our resources.
Judge Martin’s dissent advocates rehearing Matchett based on the plight of career offenders who were sentenced in the Eleventh Circuit, but of course there are costs on the other side. According to a recent study by the Sentencing Commission, one in ten federal prisoners are career offenders — or 20,000 total offenders. See Career Offender Report, supra, at 24. Of those career offenders, 80 percent are potentially eligible to benefit from an invalidation of the residual clause of the career-offender guideline because they have a conviction for a crime of violence. See id. at 28. But once they are released from prison, career offenders with at least one conviction for a crime of violence reci-divate at a rate of almost 70 percent— much higher than the recidivism rate for other federal prisoners, even though career offenders are older when released from prison after serving long sentences. See id. at 40-41. Their recidivating crimes of choice are most often violent — assault (28.6 percent) and robbery (35.3 percent). Id. at 42. Undoubtedly, smaller percentages of these offenders commit even more serious crimes like murder, rape, and kidnapping. Although Judge Martin’s dissent empathizes with the prisoners who were sentenced in the Eleventh Circuit under the career-offender guideline, they are not the only “victims” our decision might affect.
Any cost-benefit analysis is better left to the Sentencing Commission, an expert agency that gathers data on disparities and recidivism and amends or repeals the guidelines accordingly. Our job is to get the law right. In our view, the panel opinion in Matchett correctly assessed the longstanding limits on the vagueness doctrine and correctly held that it does not apply to advisory sentencing guidelines. We concur in the denial of rehearing en banc.

. For example, a defendant convicted of being a felon in possession of a firearm who has two felony convictions from earlier in his life normally gets a sentencing range of 15 to 21 months. See id, § 2K2.1(a)(7). If just one of those convictions meets the definition that Johnson said was "nearly impossible to apply consistently,” 135 S.Ct. at 2560, the range becomes 41 to 51 months. See USSG § 2K2.1(a)(4)(A). If both meet that definition, it becomes 63 to 78 months. See id. § 2K2.1(a)(2). This fourfold increase is automatic even if the earlier convictions were themselves punished with as little as a year in state prison. See id. § 4B 1.2(a).
USSG § 2K2.1 may affect more people than the career offender guideline. The Sentencing Commission’s most recent published data shows that ”[i]n fiscal year 2014, there were 5,498 offenders convicted under 18 U.S.C. § 922(g), accounting for 7.2% of all offenders sentenced under the guidelines.” See http:// www.ussc.gov/sites/default/files/pdf/research- and-publications/quiclc-facts/Quick-Facts-FeIon_in_PossessionJFY14.pdf. "For each of the past five years, more than half of offenders convicted of violating 18 U.S.C. § 922(g) were sentenced within the [guideline] range.” Id. And as with § 4B1.1, two of the top five districts for § 922(g) cases, are in the Eleventh Circuit. See id. And that’s just § 922(g). USSG § 2K2.1 is also used to calculate sentences for violations of 18 U.S.C. §§ 922(a)-(p), (r)-(w), 00(1), 923, 924(a), (b), (e)-(i), (k)(o), 2332g, as well as 26 U.S.C. §§ 5685, 5861(a) — (/), 5871. See USSG App. A.